*IN THE UNITED STATES DISTRICT COURT*
*FOR THE WESTERN DISTRICT OF MICHIGAN*
*SOUTHERN DIVISION*


UNITED STATES OF AMERICA,

                 Plaintiff,

vs.                          Case No.  1:24-cr-7

RICHARD ANTHONY REYNA DENSMORE,

                 Defendant.
_____/

*MOTION HEARING*

*BEFORE THE HONORABLE HALA JARBOU*
*United States District Judge*

*Lansing, Michigan, Thursday, February 8, 2024*


APPEARANCES:

For the Plaintiff:   ADAM BARRETT TOWNSHEND
                         U.S. Attorney
                         330 Ionia Ave., NW
                         Grand Rapids, MI 49501-0208
                         (616) 456-2404

For the Defendant:   JAMES STEVENSON FISHER
                         Federal Public Defender
                         50 Louis St. NW, Ste. 300
                         Grand Rapids, MI 49503
                         (616) 742-7420

REPORTED BY:         TRISHA N. CAMERON, CSR, RMR, CRR, RDR
                         Federal Official Court Reporter
                         128 Federal Building
                         Lansing, Michigan 48933

1    Lansing, Michigan

2    February 8, 2024

3    11:03 a.m.

4                    *PROCEEDINGS*

5            THE CLERK:  All rise.  The United States District

6    Court for the Western District of Michigan is now in session.

7    The Honorable Hala Jarbou, Chief District Judge, presiding.

8    All persons having business before this Court draw near, give

9    attention, and you shall be heard.  God save these United

10   States and this Honorable Court.

11           Thank you.  You may be seated.  Court calls

12   Case No. 24-cr-7, United States of America versus Richard

13   Densmore.

14           Counsel, please state your appearances for the

15   record.

16           MR. TOWNSHEND:  Your Honor, good morning.  Adam

17   Townshend on behalf of the United States.

18           THE COURT:  Good morning.

19           MR. FISHER:  Good morning.  James Fisher on behalf of

20   Mr. Densmore, who is seated to my right.

21           THE COURT:  Good morning, Mr. Fisher.  Good morning,

22   Mr. Densmore.

23           This is the date and time set for the government's

24   emergency motion for revocation of the order of release that

25   was made by Judge Kent I believe two days ago on Monday.

MR. TOWNSHEND:  Monday afternoon, Your Honor.  That's right.

THE COURT:  Monday.  So, Mr. Townshend, this is your motion.

MR. TOWNSHEND:  Thank you, Your Honor.  May I use the lectern?

THE COURT:  Yes.

MR. TOWNSHEND:  Your Honor, there are two preliminary matters I'd like to address with the Court before making my substantive argument.  The first is certain statements that are made in the Pretrial Services Report that I understand are now erroneous.  The first is on page 2 of that report in which the defendant represented to Pretrial Services that there were no -- I should say his wife, Ms. Dove, represented that there are no minor children who are neighbors of the defendant.

I received a call yesterday afternoon from a Mr. Sedelmaier, former marine, who represented that he lives 30 yards away from the defendant, has three minor children, and to say that Mr. Sedelmaier was irate about Mr. Densmore's release would be and understatement.

The second is there are internet capable devices in the residence including, as we said in our motion, a Nintendo Switch.

The third is we continue to talk about these firearms.  There was a representation in the Pretrial Services

1    Report by Ms. Dove who said the firearm, the rifle and

2    ammunition observed at the second search warrant were no

3    longer in the home.

4         Probation advised both counsel here today that as of

5    9:00 Monday night, when a home visit was conducted, that, in

6    fact, the weapon and ammunition and crossbow were all still in

7    the residence.  I'm sure my colleague Mr. Fisher will address

8    that.  But I wanted to make the Court aware that despite all

9    the conversation we had about that and the representation at

10   the detention hearing that the gun was no longer in the home,

11   that appeared not to be the case.

12        The second preliminary matter, Your Honor, that I'd

13   like to at least briefly address is this idea that the

14   magistrate judge raised about the gap in time between the two

15   search warrants that were executed in this case, and to the

16   extent that that bears on sort of the credibility of the

17   government's arguments with respect to Mr. Densmore's

18   dangerousness.

19        Certainly the government did execute a search warrant

20   in February of 2023 and executed a second search warrant and

21   arrested Mr. Densmore on January 31st of 2024, and I

22   understand why the magistrate judge was concerned optically

23   about that gap in time.

24        What I can represent to the Court is that I believe

25   that those concerns about that one-year period, they assume

1    the government had all the necessary evidence that it needed

2    as of that February 2023 search warrant to bring the most

3    serious charges, particularly the exploitation and coercion

4    charges in the indictment at that time.  That was not true.

5            That question assumes, Your Honor, and those concerns

6    assume that the government had secured -- had identified

7    victims who, as you know, mask their names online with

8    different usernames.  That question about the gap in time

9    assumed the government had identified specific minor victims,

10   had secured their cooperation, and had all the evidence

11   marshalled about Mr. Densmore's activity and the related media

12   in the Sewer server on Discord.  That assumption would also be

13   inaccurate.

14           And again, Your Honor, as we showed at the detention

15   hearing, this group that we'll be talking about today, 764, is

16   an emerging threat.  And I wanted to make the Court aware in

17   this one-year period that the magistrate judge was concerned

18   about, I would not expect the judge or your Honor to be

19   familiar with the need to coordinate with other

20   investigations.

21           This is an international group of people, and the

22   U.S. Attorney's Office has to coordinate its investigations

23   with members like Mr. Densmore with other offices, and we also

24   have to preserve and respect the integrity of our

25   investigation from a group like this who violently and swiftly

1    retaliates against people it believes are weak or compromised.

2    Finally, I would just note for the record that the

3    magistrate judge who made the detention decision also reviewed

4    the second search warrant in this case and raised no questions

5    with the government at the time about why there was a delay of

6    one year.  In any event, I don't think the fact of the

7    government's one-year investigation period before bringing

8    charges has any bearing on the defendant's future

9    dangerousness.  I think we have to rely here today on the

10   facts that were developed at the detention hearing.

11   And, again, I remind the Court that the standard of

12   review here is de novo.  The magistrate judge's decision

13   enjoys no presumption of deference.

14   Okay.  The evidence at the detention hearing, Your

15   Honor, showed that the defendant is Rabid, a child predator

16   who is a member of a violent and extremely sadistic group

17   called 764 that targets children to cut themselves and engage

18   in sexually explicit acts.  We admitted an FBI press release

19   that was dated September of 2023 that describes this group as

20   using, and I quote, threats, blackmail, and manipulation to

21   control victims into recording or live-streaming acts of

22   self-harm are child sexual abuse material.  Your Honor, that's

23   exactly what we have.

24   At the detention hearing, we established that the

25   defendant ran this Discord server and online messaging server

called Sewer that was dedicated to streaming acts of self-harm and child pornography.  We also elicited testimony that the defendant solicited a minor girl to get people to stream content on Sewer and engage in such conduct herself, including, Your Honor, engaging in penetrative acts with, by my count, and I do have Exhibit 3 in a sealed envelope with me, by my count, based on the screen shot that we have of the media, a penetrative act with some 15 people, including the defendant, in attendance on the Discord server.  This is online abuse and online trafficking.

Consistent with the defendant's vowed affiliation with the 764 group, Your Honor, agents found child pornography and evidence of cutting, of people using razor blades to cut into their skin on the defendant's phones that were seized in February of 2023, and the government showed at the detention hearing that even then the defendant wasn't done.

On January 31 of this year, Your Honor, just a few days ago, agents discovered that the defendant had obtained additional devices, despite knowing about the prior seizure of his last devices, and he hid them in an air vent in his bedroom.

On that phone -- and, again, we don't have a full extraction because those phones were just seized.  But on that phone, we saw a heartbreaking picture of a girl with Rabid, the defendant's online Discord username, written across her

1    forehead.  We saw, again, evidence of bloody cutting and

2    self-harm, including the letter R dripping with blood, and we

3    provided those images at the detention hearing as well.

4         And I'll say, Your Honor, regardless of whether

5    there's evidence that the defendant himself solicited those

6    materials that were seized during last week's search warrant,

7    the fact that they're on the phone is itself indicative of his

8    obsessive interest and violent tendencies.

9         At the detention hearing, the magistrate judge

10   acknowledged the fairly heavy evidence of the indicted counts.

11   And there, Your Honor, is where I think the factual recitation

12   alone is enough for the clear detention of the defendant.  But

13   I'll address three ways I think that the magistrate judge

14   erred in rendering his opinion.

15        And the first, Your Honor, just by way of background,

16   I'll note that Courts in the Sixth Circuit affirm the

17   propriety of pretrial detention in what are relatively less

18   concerning distribution and child pornography receipt cases.

19   All of these offenses are extremely serious and harmful.  But

20   if pretrial detention is appropriate in distribution and

21   receipt cases, it has to be appropriate in cases involving

22   coercing and soliciting and manipulating minors into harming

23   themselves and engaging in penetrative pornographic acts.

24   This case is much worse, as we showed at the detention

25   hearing, than just receipt and distribution.

1       I think the magistrate judge made three fundamental

2  errors in his analysis.  First, regarding the presumption of

3  detention.  Yes, this is a presumption case, and the

4  government acknowledges it's not a heavy burden.  The

5  defendant doesn't bear a heavy burden of production to rebut

6  that presumption.

7       But the Sixth Circuit in the Stone case made clear,

8  even if the defendant meets his burden of production, the

9  presumption doesn't go away.  The Sixth Circuit says the

10  presumption remains as a factor because it reflects Congress's

11  substantive judgment that particular classes of offenders

12  should ordinarily be detained prior to trial.  The magistrate

13  judge did not consider that in his analysis.

14       The second error, Your Honor, is that the magistrate

15  judge gave short shrift to the nature and circumstances of

16  this offense.  There's a passing reference in the transcript

17  to this being a crime of violence that I think grossly

18  understates and undersells the charged offenses and the

19  evidence that was presented at the detention hearing.

20       As the Court I'm sure is well aware, child

21  pornography offenses weigh heavily in favor of detention.  And

22  in a case United States versus Cornish, it's 2020 Westlaw

23  1498841 out of the Eastern District of Kentucky in 2020, the

24  Court recognized allegations of enticing a child, like the

25  charges here, allegations of enticing a child to engage in

1    sexual activity are particularly dangerous and pose a threat

2    that's not easily mitigated.

3            I also take issue, Your Honor, as I have in other

4    child exploitation cases that I've handled, with this idea

5    about a hands-on distinction.  I think in this day and age

6    with the ubiquity of the internet and we have predators like

7    the defendant as we established at the detention hearing who

8    are reaching out nationwide online and manipulating people to

9    harm themselves and touch themselves and engage in

10   pornographic acts, I think that's virtual abuse, that's

11   virtual trafficking, and I don't think a hands-on distinction

12   is meaningful.  And I think that the magistrate judge erred in

13   relying on that.

14           Finally, Your Honor, while the magistrate judge

15   acknowledged that internet usage is one of the harsh --

16   hardest conducts to police, it appears from the oral opinion

17   that was rendered that he deemed that an order not to access

18   the internet and home detention sufficient to address the

19   dangerousness that this defendant presents.

20           I have two issues with that.  First, I think we

21   established at the detention hearing that even federal

22   intervention and the seizure of the defendant's devices in

23   February of 2023 did not dissuade him from getting new phones

24   and engaging in misconduct.  It's clear from the Pretrial

25   Services Report that there are still internet capable devices

1    in the defendant's home, and it's unclear to the government,

2    Your Honor, how a paper order would have any practical impact

3    in preventing this defendant from accessing the internet.

4         And that's important because Court's in the Sixth

5    Circuit recognize the impossibility and the futility of this

6    condition.  The Sixth Circuit has opined that the internet is

7    ubiquitous.  This is United States versus Foster, 2020 Westlaw

8    6791572.  The Sixth Circuit said, there is simply no fail-safe

9    way to prevent any and all exposure even if a defendant

10   forfeits all electronic devices and is denied access to the

11   internet.

12        And Courts in this Circuit have repeatedly followed

13   suit.  Courts have repeatedly noted that prohibiting internet

14   access to someone on release is a mere impossibility because

15   of the internet's ubiquitous presence.  Again, in United

16   States versus Hoilman where the defendant committed an

17   internet-dependent crime like this defendant, the ubiquity of

18   the internet creates a significant obstacle to reasonably

19   assuring the safety of any other person or the community.

20        Those were three of the more serious errors, Your

21   Honor, that the magistrate judge committed in releasing this

22   defendant on bond.  Again, the magistrate judge's decision

23   enjoys no deference because of the standard of review.  This

24   Court can take a fresh look at the record and apply de novo

25   the application of the 3142 factors.

1          And here, all of those factors the government submits
2    sway clearly in favor of detention.  First, there's the
3    presumption.  Even if rebutted, the Court has to consider it.
4    And there's a presumption here and a judgment by Congress that
5    child predators should be detained.

6          Second, the nature and circumstances of the offense.
7    Again, understanding the evidence that the government put on
8    at the detention hearing and the nature of the charged
9    offenses.  This is violent child exploitation.  It heavily
10   favors detention in a way the magistrate judge did not
11   consider.  As the magistrate acknowledged, the government has
12   substantial evidence of the indicted offenses, and that also
13   favors detention.

14         In terms of the defendant's history and
15   characteristics, you can see from the transcript, Your Honor,
16   the defendant has a substantial history of mental health
17   conditions that are deeply concerning to the government in
18   light of the conduct that he's engaged in.

19         Finally, in terms of danger to the community.  Again,
20   this is all abuse that is done online.  And we have a
21   defendant who has, after the FBI seized his phones and gave
22   him a receipt for them, in February of 2023, got new phones
23   and hid them.  And those phones appear, based on evidence we
24   presented, to have more evidence of self-harm, fan signing,
25   and the same conduct that the defendant was engaged in that

1    led to the indicted charges.

2           Again, it doesn't matter if we know whether or not he

3    solicited that self-harm.  The fact that he has it on the

4    phone in light of the conduct and the evidence presented at

5    the detention hearing shows his unique dangerousness to this

6    community.

7           And finally, an order addressing -- ordering the

8    defendant not to access the internet when an FBI search

9    warrant was not enough to get him to stop shows the inherent

10   futility of that condition.  Your Honor, the government

11   submits this is a clear case of detention and not even a close

12   case.

13          And so if the Court has any questions for me, I'm

14   happy to answer them.  But with that, I'll rely on my

15   argument.

16          THE COURT:  Mr. Townshend, I know that -- and I know

17   that Mr. Schultz can probably speak to this.  I know Pretrial

18   Services did not recommend detention, indicated there was a

19   set of conditions that were sufficient to monitor the

20   defendant.  But Pretrial Services is not allowed, probation

21   department is not allowed to look at the nature and

22   circumstances of the offense.

23          Is that correct, Mr. Schultz?

24          PROBATION OFFICER:  Yes, Your Honor.

25          THE COURT:  So tell me, Mr. Schultz, just so that I

1    remember and I have an accurate recollection.  You're not

2    allowed to look at the nature and circumstance of the offense.

3    What else are you not allowed to look at in making a

4    determination or recommendation?

5         PROBATION OFFICER:  We're also not allowed to take

6    into consideration whether the case has a rebuttal of

7    presumption.

8         THE COURT:  Okay.

9         MR. TOWNSHEND:  And I would add, Your Honor, I agree

10   with Mr. Schultz and I agree with the Court on that.  And I

11   think as we've shown, in addition, Pretrial Services has to

12   rely on the information that they're being given by people in

13   the investigation, and it's clear to the government that much

14   of that information, substantial and material information,

15   including about the prospects of the defendant interacting

16   with minors was simply not accurate.

17        THE COURT:  I've also reviewed everything, including

18   the transcript of the hearing.  And there was some question --

19   I don't believe Judge Kent, but you all tell me, I don't think

20   there was much information about the prior conviction, or was

21   there, presented to him?

22        MR. TOWNSHEND:  There was a discussion, Your Honor.

23   I think -- and, again, Mr. Fisher will certainly correct me if

24   I'm wrong.  I think there was an understanding that that was

25   an offense on the record from 1997, and it was for CSC.  I

1    think the discussion was about whether HYTA applied, and it

2    appears that it did.

3          But to the extent that the Court in rendering his --

4    the magistrate judge in rendering his opinion said, you know,

5    there was little information about that offense, I think that

6    needs to be corrected as well because I think it was

7    understood at that detention hearing that it was a CSC

8    offense.

9          THE COURT:  So do we know anything more than CSC

10   offense?  Obviously in the state there are different degrees

11   of --

12         MR. TOWNSHEND:  My understanding, and, again,

13   Mr. Fisher can correct me if I'm wrong, it was a CSC fourth,

14   and that there was more recent concerns in a report that the

15   government has produced in discovery about the defendant's

16   failure to register as a sex offender.  That's where the

17   information about this 1997 CSC came from.

18         THE COURT:  So is he currently required to register

19   and he's not registered?  Is that what you're telling me?

20         MR. TOWNSHEND:  My understanding from the report that

21   the government has, Your Honor, is that he's -- I don't know

22   the current registration status.  The report from the State of

23   Michigan that the government has received indicated that there

24   were concerns that he was not registered as a sex offender

25   when he had to be.

1          THE COURT:  Okay.  All right.  Thank you,

2    Mr. Townshend.

3          MR. TOWNSHEND:  Thank you, Your Honor.

4          MR. FISHER:  I'll start where Mr. Townshend left off,

5    Your Honor, and try to address the questions about the 1997

6    issue.

7          Number one, probation was not able to find an NCIC

8    entry for this offense, which I think indicates that -- and

9    I'm, you know, relatively new to Michigan still.  My

10   understanding of HYTA is it has been changed and altered quite

11   often in the last 30 years.  But I believe this case was

12   dismissed after he completed HYTA successfully, which is why

13   there's no entry.

14         THE COURT:  I thought -- so I know it is if you can

15   successfully complete HYTA, it's dismissed.  So there isn't a

16   felony -- there isn't a conviction.

17         MR. FISHER:  Correct.

18         THE COURT:  But I thought law enforcement still -- it

19   showed up when law enforcement ran whatever check that they

20   ran so that the full history is known.

21         Mr. Schultz, is that not correct?

22         MR. FISHER:  That's what leads me to believe that it

23   was disposed of as a juvenile adjudication, Your Honor.

24   Normally it would be, but HYTA also --

25         THE COURT:  Even juvenile adjudications.  I mean,

1   there are records of those.  You're not allowed to use them in

2   certain ways, just like HYTA.  But there are -- there should

3   be records, I think, for law enforcement when there are checks

4   made.

5        Mr. Schultz, do you have any additional information

6   as it relates to that?

7        PROBATION OFFICER:  Yes, Your Honor.  Generally, it's

8   determined by the entry person.  So whoever put the criminal

9   history into the Law Enforcement Information Network, that

10  would determine whether we have access to it or not.

11  Oftentimes we will see that a person was placed under HYTA.

12  However, cases that are older tend to be excluded from entry

13  into the Law Enforcement Information Network.

14       THE COURT:  And this was when he was age 17?

15       MR. FISHER:  The -- I think the conviction date is

16  from when he was 20, Your Honor, but the offense occurrence I

17  think predated that by sometime.  And my understanding from my

18  client is that it was disposed of as a juvenile adjudication,

19  even though he had already reached the age of maturity, which

20  I believe the statute allows for still.

21       THE COURT:  Well, at the time, I think age 17 was

22  considered an adult.  It would go through the adult system.

23  It's recently, I think, been bumped to 18.

24       MR. FISHER:  The Court would know better than me.

25       THE COURT:  But I don't think that long ago.  I think

1    it was still 17 was charged as an adult.  So and he wouldn't

2    get the benefit of HYTA as a juvenile.  Well, maybe not.  Just

3    because every offense is sort of diverted.  So I think this

4    was more for adult offenders, I think at the time 17 to 21 if

5    it was the first offense.  So there's just some discrepancies

6    that I can't make sense of.  But regardless.

7           MR. FISHER:  My argument would be that we can't rely

8    on information we don't have, Your Honor.

9           THE COURT:  Absolutely.

10          MR. FISHER:  Even if that -- we were to assume for

11   purposes of this hearing that it does exist, it is so old that

12   I think it has very little bearing on the issue of

13   Mr. Densmore's dangerousness or risk of flight, which is what

14   we're here for today.

15          THE COURT:  Right.  And I'm not assuming anything

16   about HYTA or the conviction or where it was.  But I can

17   certainly at least consider the prior conduct in a total

18   dangerousness evaluation.  You agree with that?

19          MR. FISHER:  Not if we don't know what the conduct

20   is.  That's my problem.  I don't think we have any information

21   from which the Court can accurately determine what happened,

22   what the allegations are.

23          THE COURT:  Other than just to know -- I'm sorry.

24   Other than just to know that it was a CSC.

25          MR. FISHER:  I mean, I'm not even so comfortable as

1    to admit that.  It could have been an attempted CSC for all we

2    know.  I'm not sure how it was disposed of.  I haven't seen

3    any evidence of it.

4            THE COURT:  CSC or attempted CSC, I can consider the

5    fact that there was some conduct, even if there wasn't an

6    arrest or a conviction, that there was some conduct of a CSC

7    nature.

8            MR. FISHER:  I think the Court's allowed to consider

9    everything that we have evidence of.  There is at least some

10   evidence of this.

11           Now, I do think that the fact that the report.

12   Mr. Townshend referenced, which dated from 2017 when the

13   initial contact was made with the sheriff's office and then

14   there was subsequent conduct, I think they're confused about

15   whether or not Mr. Densmore even has to register because they

16   certainly haven't charged him in the state system with failure

17   to register.  This is seven years ago when the first contact

18   was made.  I think there's a lot of ambiguity here on both the

19   state and federal side of what's going on with that case.

20           And on the opposite side of that, Your Honor, we're

21   talking about facts that I think outweigh certainly that

22   charge but also the instant charge.  Mr. Densmore, factually

23   he has a job.  He's employed.  He has no previous history of

24   failing to appear.  No previous history of violent conduct

25   beyond this 1997 whatever it is.

1    The allegations here are what the government is

2    relying on.

3    Mr. Densmore is also disabled.  He's also a veteran

4    who was honorably discharged.  Now, the government made

5    mention of his mental health diagnoses, and those are

6    certainly issues that the Court has a legitimate concern

7    about.  But there's no indication that Mr. Densmore is

8    actively suffering from mental diseases or defects that render

9    him a danger to the community.

10    Judge Kent ordered mental health treatment and

11    evaluation as part of the bond conditions when he imposed bond

12    in this case.

13    Now, I'm going to sort of go back through the

14    government's arguments and point out where I think the

15    government is deficient in its assessment of the facts.

16    First of all, the Bail Reform Act isn't about

17    preventing all possible harm.  The government cited some case

18    that references the inability to absolutely control somebody's

19    access to the internet.  That's not what the Bail Reform Act

20    requires.

21    What the bail act requires is reasonable assurance

22    that the defendant does not engage in violent activities that

23    are a danger to the community or any activities that are a

24    danger to the community or that he is reasonably assured to

25    appear at trial.  It's not a perfect assurance that he

1  complies or that he does not do anything that violates the

2  conditions of his bond.  And that is why we have an aggressive

3  Pretrial Services evaluation particularly in cases that fall

4  under the Adam Walsh Act to make sure that somebody in

5  Mr. Densmore's position does not continue any sort of conduct

6  that would fall afoul of his bail requirements.

7          I've spoken with Agent Jabour, who e-mailed

8  Mr. Townshend and I about the firearm.  My understanding is

9  the firearm and ammunition, as well as the marijuana, all of

10  which in the state system and according to all the records we

11  have were legally possessed at the time of Mr. Densmore's

12  arrest, have been removed from the home.  I believe his

13  grandmother or his mother provided some of the information

14  about that.  His mother does not live in that home.  His

15  grandmother suffers from Alzheimer's, and there is some

16  confusing issues for her about what's going on as a result of

17  that.

18          THE COURT:  All right.  So let's talk about that.

19  I'm sorry.  Your information as of when was that they were

20  removed because Mr. Townshend is telling me that they haven't

21  been?

22          MR. FISHER:  I spoke with Tonika Cooper I think

23  yesterday.  She called me about this hearing and about

24  Mr. Densmore's bail conditions.  I believe that they have

25  successfully had the firearms and ammunition and marijuana

1    removed from the home.  Also the internet has been disabled in

2    the home.  He does have an internet-capable device, the

3    Nintendo Switch.  This is a capability.  It is not an access

4    point.  So there's no concern in my mind that Mr. Densmore has

5    continuous access to firearms, ammunition, or to the internet.

6         With regard to -- what the government's argument

7    essentially hinges on is this weight of the evidence issue.

8    And what that -- what the case law tells us and what Stone

9    tells us, and Stone is an interesting example to use because

10   it dealt with individuals who were planning to wage war

11   against the United States who were subsequently released on

12   bond.

13        Mr. Densmore -- the government has to show that this

14   conduct raises a sufficient concern about Mr. Densmore's

15   ongoing danger to the community if he is released.  What the

16   government produced at the initial hearing and what they

17   referenced here today included several pictures.  When the

18   agent testified about those pictures, he could not tell

19   anybody in the courtroom, including the Judge, what the age of

20   the individuals who were engaging in self harm was.  Couldn't

21   tell anybody what the age of the person who wrote this handle

22   Rabid on her forehead in marker was.  There's no testimony

23   about the ages of those individuals.

24        Mr. Townshend does have a picture that I've seen that

25   does appear to indicate a person who's under the age of 18.

1      That's one picture that I've seen so far.

2              The ongoing issues with cutting and the interest in

3      self harm and these web communities that are of a darker

4      nature certainly is disturbing on its face.  But it does not

5      indicate that Mr. Densmore is a danger to the community.  And

6      as much as we might not like it, these are

7      constitutionally-protected activities.  A person can cut

8      themselves and take a picture of it, and it's covered by the

9      First Amendment.  So Mr. Densmore's interest in it might be

10     distasteful, but it does not indicate that he's a danger to

11     the community.

12             So when we look at the totality of the circumstances

13     here, what we have is a government-executed search warrant in

14     2023 where they at least had probable cause to believe that

15     Mr. Densmore was communicating with minors via the internet

16     and that that resulted in the production of child pornography.

17             The government argues that a year later, that that --

18     that fact that that -- that his arrest took place a year later

19     shouldn't be weighed in the calculus of determining whether or

20     not he's a danger.  There are many avenues the government has

21     for initiating detentionary proceedings for speaking with

22     state agents, for even raising issues in probate court if they

23     believe that a person is an ongoing danger to himself or

24     others, and they did not take any of those avenues that would

25     have protected their investigation.

1          I think the Court can and should weigh the fact that

2     Mr. Densmore was at liberty for over a year while the

3     government conducted its investigation and at no time did they

4     think that he was of a sufficient danger to warrant any sort

5     of custody.

6          THE COURT:  What about the question of during that

7     time period?  Clearly there is evidence of two additional cell

8     phones with evidence of continued similar criminal conduct.

9          MR. FISHER:  It's unwise, but it's not illegal.  And

10    the fact that he had his devices seized doesn't mean that a

11    judicial order was imposed upon him --

12         THE COURT:  No, no, no.

13         MR. FISHER:  -- to refrain from contacting anybody on

14    the internet.

15         THE COURT:  And that's not what I mean.  But I think

16    the argument is it's not that it was illegal for him to

17    possess guns, or I'm sorry, to possess phones or more phones.

18    The fact that he did possess two additional phones that were

19    hidden that had at least preliminarily indications of the same

20    continued criminal conduct allegedly.

21         MR. FISHER:  I think if he had been under a judicial

22    order to not have access to the internet and not engage in

23    that conduct, it would be relevant for the bail determination.

24         THE COURT:  It's not relevant for bail determination

25    because continuing criminal activity is not relevant?  I mean,

1    whether he's under an order or not, shouldn't --

2        MR. FISHER:  Well, the issue here is whether the

3    Court can impose reasonable conditions of release that

4    reasonably assure the safety of the community and the

5    appearance of the defendant at trial.

6        The fact that the government seized evidence and

7    Mr. Densmore appears to have continued to supply them with

8    additional evidence of his conduct doesn't touch that issue.

9    It simply doesn't.  If that had been a judicial order

10   requiring him to refrain from internet access, requiring him

11   to not have cell phones or not have electronically-available

12   devices, I think it would be germane.

13       THE COURT:  Mr. Fisher, I don't know that I can take

14   those leaps that you're making.  Let's just talk generally.

15   If someone is committing some sort of conduct, some criminal

16   conduct that allegedly is dangerous to others, the fact that

17   at some point there might have been an intervention, but

18   regardless, it doesn't matter that they're not under any sort

19   of Court supervision.  The fact that there's continued

20   behavior, that doesn't show a continued dangerousness to the

21   community if there's that continued criminal behavior?

22       MR. FISHER:  I mean, I think the Court can weigh the

23   fact that there's allegedly additional conduct found on those

24   devices.  But the issue is whether there are conditions that

25   this Court can impose that Mr. Densmore would follow.

And the act of seizing his devices is a probable
cause determination that there might be incriminating evidence
on those devices.  It is not a warning to the person.  It is
not a warning to the person that the Courts are requiring him
to refrain from doing things that might be used against him in
the future.  And as far as I know, the police who seized those
devices didn't even give Mr. Densmore any sort of notice about
what they were even looking into.  They simply seized his
devices.

So the mere fact, which is what the government I
think is relying on, that these devices were seized and
Mr. Densmore continued to engage in this conduct as
exemplifying some sort of ongoing danger to the community that
the Court cannot remedy with a bail order is the issue here.
I think the Court can remedy that issue, as Judge Kent did, in
release Mr. Densmore and making sure that he is prohibiting
from accessing the internet, that he has aggressive bail
conditions, which the Court is required to impose under the
Adam Walsh Act.

THE COURT:  I understand your argument that it's
not -- the intention isn't foolproof.  But how do I have
reasonable assurance that if I let him stay out with these
conditions that he's not going to somehow find another phone,
another device to be able to connect to the internet?

MR. FISHER:  I mean, the whole determination of bail

1    relies upon the Court having some trust in both the defendant,

2    who has not been adjudicated guilty, and on the Pretrial

3    Services officers to do an aggressive job of monitoring the

4    person.

5            THE COURT:  Right.  But I have to have reasonable

6    assurance that those conditions are going to fulfill all those

7    purposes.

8            MR. FISHER:  Certainly.

9            THE COURT:  And that was my question.

10           MR. FISHER:  And I think that the rebuttable

11   presumption that is rebutted here based upon Mr. Densmore's

12   lawful profession, his job, his various -- his satisfactory

13   discharge from the military, the fact that he cares for an

14   ailing grandmother who's got Alzheimer's, the fact that he has

15   family support who brought him here today, and has his mother

16   who lives in a different home also supporting him, all rebuts

17   the presumption of detention, and those give the Court the

18   factors necessary to release Mr. Densmore on bond.

19           What the government's argument boils down to is that

20   every person charged with these offenses should be detained,

21   and that is not what the Constitution allows and is not what

22   the statute says.  What it says is each person has to be

23   treated independently and individually.  And the mere

24   allegations of conduct cannot be the sole basis for detaining

25   somebody when they have rebutted the presumption of

1    dangerousness and rebutted the presumption of risk of flight,

2    which Mr. Densmore has.

3           THE COURT:  And I don't think risk of flight anyone

4    is arguing as a basis to detain him, correct?  Mr. Townshend?

5           MR. TOWNSHEND:  That's correct.

6           MR. FISHER:  What it boils down to, Your Honor, is

7    the conduct of what he was doing on the internet, which while

8    the Court may believe based upon the government's, you know,

9    representations is disturbing and frightening, it does not

10   indicate that he is an ongoing danger that this Court cannot

11   mitigate through aggressive Pretrial Services that are

12   required by law and by imposing very stringent conditions on

13   Mr. Densmore's release.

14          So I think that the facts speak for themselves.

15   Mr. Densmore came here to court willingly, knowing that there

16   was a possibility of him being remanded into custody today.

17   He is by all appearances, you know, trying to comply with the

18   bail conditions, and the family is trying to remove the items

19   of concern that probation has identified.  And I think that

20   that solves this problem, and he should remain on bond.

21          THE COURT:  All right.  Thank you.  Anything else,

22   Mr. Townshend or Mr. Schultz?

23          MR. TOWNSHEND:  Thank you, Your Honor.  I appreciate

24   the opportunity.

25          Just to correct my colleague, we're not talking about

1    allegations here.  We're talking about the evidence that

2    was -- that was admitted at the detention hearing.  This is

3    evidence.  This is not the government making mere allegations.

4    This is evidence that was uncontested and admitted at the

5    detention hearing.

6         I agree with the Court that whether or not

7    Mr. Densmore was under a Court order not to do things is

8    completely irrelevant to his future dangerousness.  The fact

9    of the matter is the evidence that came in at the detention

10   hearing is that he ran an online platform for self-harm and

11   child pornography.  He manipulated a minor girl who is

12   cooperating with this investigating into streaming self-harm

13   and child pornography on that website.

14        He had his phone seized in February of 2023.  He got

15   new phones.  He hid them.  And again, regardless of what the

16   age of these people are on this phone that was seized last

17   week, regardless of whether Mr. Densmore was involved in

18   soliciting these acts of self-harm, he claims affiliation with

19   a violent and ever evolving group called 764, and the evidence

20   on his second phones that were seized last week show more

21   bloody wounds and an interest in violent imagery and the same

22   sorts of things that this group is known for.  There's no way

23   around that, and my colleague just simply doesn't address

24   that.  The facts -- the pictures here speak for themselves.

25   This is an incredibly dangerous person.

1          The fact that his internet is disabled at his home is

2     of no consequence.  There's a public library.  It's the

3     ubiquity of the internet.  He can access it from anywhere.

4     There's schools.  There's public libraries.  I'm guessing the

5     EZ Mart may itself have WiFi.  WiFi and internet is

6     everywhere.  The fact that it's disabled at his house means

7     nothing.  This is an individual who has demonstrated that he's

8     going to get devices, he's going to obtain violent imagery,

9     and he's a member -- a self-avowed member of the group 764.

10          I think his dangerousness, Your Honor, is beyond

11    question, and an order that he not access the internet is

12    simply wildly insufficient to mitigate that risk.

13          MR. FISHER:  Briefly, Your Honor, if I may?

14          THE COURT:  Sure.

15          MR. FISHER:  The Rules of Evidence don't apply at

16    these hearings.  I did not contest the evidence that

17    Mr. Townshend brought in, even though I have no idea of the

18    provenance of this evidence, of the identity of the

19    individuals, or the age that has been alleged being

20    established by any sort of, you know, evidentiary burden that

21    would normally be required at trial, and I think these are

22    still allegations because Mr. Densmore has not been proven

23    guilty of any of the things that Mr. Townshend alleges that he

24    committed.

25          THE COURT:  All right.  Thank you.

1        Mr. Schultz, anything else from you?

2        PROBATION OFFICER:  No, Your Honor.

3        THE COURT:  All right.  This, as I've indicated, is

4   the government's emergency motion to revoke the order of

5   release entered be Magistrate Kent on Monday.  The Court has

6   reviewed that motion, as well as the Pretrial Services Report,

7   the appearance bond, an order setting conditions of release,

8   as well as reading through the transcript from the

9   proceedings, the detention hearing held on Monday, February

10   5th, 2024, before Magistrate Judge Kent.

11        The Court applies, as the government noted, a de novo

12   standard of review.

13        In reviewing all the facts and circumstances in this

14   case, pursuant to 18 USC Section 3142(e), quote, a defendant

15   shall be detained pending trial if, after a hearing, the

16   judicial officer finds that no condition or set of conditions

17   will reasonably assure the defendant's appearance as required

18   and the safety of any other person and the community.

19        There is no issue as it relates to a risk of flight.

20   Nobody is advocating, the government is certainly not

21   advocating that the defendant is a risk of flight.

22        So my review is centered on the other prong.  And my

23   standard of review is a clear and convincing standard of proof

24   that applies to determining whether any condition or

25   combination of conditions will reasonably assure the safety of

1     any other person and the community.

2            Pursuant to, as I've indicated, 18 USC 3142, that

3     clear and convincing standard comes from subsection f.

4            In making a detention determination under 3142(e),

5     the judicial officer must consider, one, the nature and

6     circumstances of the offense charged, including whether the

7     offense is a crime of violence or involved a minor victim or

8     other specific things outlined in 3142 1 -- 3142(e)(1).

9            The Court also must consider the weight of the

10    evidence against the person.  And I do note that the Sixth --

11    as the Sixth Circuit has articulated, quote, the weight of the

12    evidence factor under 3142(g) focuses on evidence of the

13    defendant's dangerousness, not evidence of the crime for which

14    a defendant is charged.  And that Sixth Circuit is cited in

15    the 2010 United States versus Stone case, 608 F.3d 939 at 948.

16           The Court also in addition to the nature and

17    circumstance of the offense and the weight of the evidence

18    must look at the history and characteristics of the person, as

19    well as the nature and seriousness of the danger to any person

20    or the community that would be posed by the person's release.

21           In looking at those considerations, first, as it

22    relates to the nature and circumstances of the offense

23    charged, including whether it involves a crime of violence or

24    involves a minor victim, the defendant is charged with five

25    counts that all involve charges of exploitation, coercion,

1    and/or enticement of children.  It also includes possession of

2    child pornography.  All of those the Court would consider as

3    classified as crimes of violence, and certainly all of those

4    charges are directly related to children or children victims,

5    as to all five of the charges.

6        As has been mentioned, the indictment that charges

7    the defendant with those five charges was returned on January

8    23rd, 2024, by the Grand Jury, and that in and of itself does

9    establish by a probable cause standard sufficient proof for

10   the presumption of detention to apply in this case pursuant to

11   3142(e)(3)(E).  And the presumption specifically of detention

12   is because of the probable cause finding that the defendant

13   committed violations of 18 USC Sections 2251 and 2252.

14       As it relates to the weight of the evidence, the

15   magistrate judge characterizes it as, quote unquote, fairly

16   heavy.  I agree that there is a sufficient basis to make that

17   characterization at least from what the Court has seen at this

18   early stage.  And, again, that focuses on the evidence of

19   Defendant's dangerousness, not for evidence of what he's

20   charged with or proving what he's charged with.

21       So as it relates to the evidence of dangerousness and

22   the weight of the evidence, and that, I think, goes along with

23   the fourth factor of the nature and seriousness of the danger

24   to any person or the community, certainly the activity that's

25   been described the Court characterizes and determines to be of

1    a violent nature involving children.  And it is a step above

2    or beyond even, quote unquote, and I hate using the term

3    typical child pornography charges, but for lack of a better

4    term, these cases or these charges and the facts associated

5    with them are a step above that in terms of showing

6    dangerousness to any person or the community, specifically as

7    it contains not only this exploitation, coercion to obtain

8    either images or to view images and/or videos while this

9    activity is going on, but that there is an element of the

10   tactics used to obtain and/or continue receipt of that type of

11   evidence that also has a violent nature to it.  And that's

12   associated with this -- all this information as it relates to

13   this 7674 group, which there are -- there is evidence of

14   Defendant's affiliation with that group, and that its purpose,

15   it seems to be, to obtain and share these images or videos

16   content of self-harm and child pornography, that element also

17   in and of itself is concerning.

18        The added element of the defendant at some point

19   possessing a weapon, legally having a registered or having a

20   weapon is concerning.  I do take Mr. Fisher's word that the

21   information he received from the probation department is that

22   at least the firearm has now been removed.  But certainly

23   that, I think, is an added layer, can be an added layer in the

24   Court's consideration for dangerousness in that there was at

25   some point access to and then the potential of accessing that

weapon or any other weapon.

In terms of the continued -- or the analysis of the dangerousness, again, the Court also is concerned that despite approximately a year ago a search warrant being executed at the defendant's home where certain media or certain items were seized, one of which was a phone, and what was found or potentially alleged to have been found on that phone and the fact that time went on and the defendant obtained two other phones -- and, yes, there was nothing preventing him from obtaining more phones.

I think what's telling is that the defendant hid those phones knowing that he -- knowing the contents.  It wasn't knowing that he shouldn't have phones.  He knew he could go out and purchase phones.  He wasn't hiding them because he thought he shouldn't possess the phones.  He was hiding them presumably based on the content that was on the phones.  And from a very early review it seems that that content involves the continued criminal behavior that's been outlined.

And so the fact that Defendant knowing that he might be under some sort of federal investigation or some sort of law enforcement investigation in general and that that didn't deter him from obtaining phones and then continuing similar activity doesn't give this Court assurance that he will also abide by other condition or by Court-ordered conditions when

1    preventing him from getting on the internet or accessing any

2    sort of device that could continue this type of behavior.

3         There is a distinction also.  I don't -- I don't

4    believe that there is a distinction to be made, or I don't

5    give it as much importance as maybe the magistrate did.  Yes.

6    There is a hands-on distinction, hands-on versus non-hands-on.

7    Certainly there are different charges for different acts.  But

8    I don't consider child pornography or any of these allegations

9    to be less hands-on in that the defendant may not be

10   physically -- physically perpetrating those particular

11   offenses.  But if he is coercing and enticing and exploiting

12   others to do that, that -- there's -- that line of distinction

13   fades for the Court.

14        So in looking at the dangerousness prong, I think

15   that's certainly a strong factor.  The presumption prong or

16   the fact that there is a presumption and the nature and

17   circumstances of the offense, that is strong as well.

18        In terms of the history and characteristics of the

19   defendant, physically I do note and I have read that there is

20   a physical sight issue.  It seems from what I've read that he

21   has ties to a community, having lived there for a significant

22   period of time and has some family support.

23        Most concerning, though, is his mental health history

24   that -- or where there's been formal diagnoses of

25   schizophrenia and borderline personality disorder.  The

1    defendant reports that he suffers from manic depression.

2    There is a prior attempt -- attempted suicide.  And from what

3    I read also in the Pretrial Services Report, there is -- the

4    defendant currently is not taking any medication as it relates

5    to his mental health or whatever issues there may be with his

6    mental health.  So that is concerning as well.

7         In terms of the criminal history, there is some

8    evidence, although the facts are not very extensive, as it

9    relates to a prior criminal sexual conduct offense that was

10   dismissed pursuant to the HYTA statute in the State of

11   Michigan, and there's some evidence that that occurred around

12   age 17.  Again, unsure if that was a juvenile or adult

13   conviction.

14        But regardless of whether there was a conviction or

15   not, and certainly with HYTA, the defendant received the

16   benefit of there not being a formal conviction, the activity

17   or the nature of the charge can be considered, and I will

18   consider it for what it is in that it's a prior criminal

19   sexual conduct with no other details.  And so I'm not putting

20   any more weight on that other than face value in terms of what

21   it is, but certainly that in and of itself is concerning to

22   the Court as well.

23        So in looking at all those factors and the factors

24   that the Court has outlined and having reviewed in totality

25   everything that occurred on Monday before the magistrate

1    judge, I'm not convinced that I have reasonable assurance that

2    there are conditions or any set of conditions that would

3    reasonably assure the safety of any other person in the

4    community.

5        And I'll touch on one additional thing that I failed

6    to touch on in terms of internet access.  I do agree with the

7    government that that is everywhere and that can be obtained

8    everywhere and there's -- there is not -- I'm not going to say

9    there's no way, but there's -- there are no conditions that

10   can reasonably assure me that he can't or won't access and

11   won't have the capability to access if he's not detained the

12   internet and/or some devices that would help him in obtaining

13   access to the internet.  It's just an impossible thing to

14   police, and considering the integral part of that component as

15   it relates to the charges and the activity in this case, I

16   don't have that assurance, that coupled with all the other

17   factors that I've reviewed, that there are any sort of

18   conditions that would reasonably assure the safety of any

19   other person or the community.

20       And so I don't believe that the defendant has

21   overcome the presumption, and I will grant the government's

22   emergency motion for revocation of the order of release.  The

23   defendant is remanded to the custody of the U.S. Marshals.

24       Anything further from anyone?

25       MR. TOWNSHEND:  No, Your Honor.  Thank you.

1          MR. FISHER:  Can I just ask a clarifying question,

2     Your Honor?  Is it that we did not rebut the presumption or

3     that the Court is not satisfied that reasonable conditions

4     would assure the safety of the community?

5          THE COURT:  I am not satisfied that there are a set

6     of conditions that would reasonably assure me the safety of

7     any other person in the community, and I don't know that I can

8     say definitively that the defense rebutted the presumption.  I

9     think the other factors weigh heavily against -- there's

10    certainly some evidence of rebutting the presumption, but I

11    don't think that evidence when compared to everything, all the

12    other factors gets him over that hump.

13         MR. FISHER:  Thank you, Your Honor.

14         THE COURT:  Anything else from anyone?

15         MR. TOWNSHEND:  No, Your Honor.  Thank you.

16         THE COURT:  All right.  Thank you.

17         THE CLERK:  All rise.  Court is adjourned.

18              *(Concluded at 11:56 a.m.)*

*REPORTER'S CERTIFICATE*

     I, Trisha N. Cameron, Official Court Reporter for the United States District Court for the Western District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a full, true and correct transcript of the proceedings had in the within entitled and numbered cause on the date hereinbefore set forth; and I do further certify that the foregoing transcript has been prepared by me or under my direction.


            /s/ Trisha N. Cameron

            Trisha N. Cameron
            CSR, RMR, CRR, RDR
            U.S. District Court Reporter
            128 Federal Building
            315 West Allegan Street
            Lansing, Michigan 48933
            (517) 270-4735