*IN THE UNITED STATES DISTRICT COURT*
*FOR THE WESTERN DISTRICT OF MICHIGAN*
*SOUTHERN DIVISION*


UNITED STATES OF AMERICA,

                Plaintiff,

vs.                                    Case No.  1:24-cr-7

RICHARD ANTHONY REYNA DENSMORE,

                Defendant.
_____/

*PLEA HEARING*

*BEFORE THE HONORABLE HALA JARBOU*
*United States District Judge*

*Lansing, Michigan, Thursday, July 18, 2024*


APPEARANCES:
For the Plaintiff:    ADAM B. TOWNSHEND
                      U.S. Attorney
                      330 Ionia Ave., NW
                      Grand Rapids, MI 49501-0208
                      (616) 456-2404

For the Defendant:    CHRISTOPHER M. GIBBONS
                      Gibbons & Boer
                      2404 Eastern Ave., SE
                      Grand Rapids, MI 49507
                      (616) 460-1587

REPORTED BY:          TRISHA N. CAMERON, CSR, RMR, CRR, RDR
                      Federal Official Court Reporter
                      128 Federal Building
                      Lansing, Michigan 48933

1   Lansing, Michigan

2   July 18, 2024

3   10:54 a.m.

4                              *PROCEEDINGS*

5          THE CLERK:  All rise.  The United States District

6   Court for the Western District of Michigan is now in session.

7   The Honorable Hala Jarbou, Chief District Judge, presiding.

8   Thank you.  You may be seated.

9          Court calls Case No. 1:24-cr-7, United States of

10  America versus Richard Densmore.

11         Counsel, please state your appearances for the

12  record.

13         MR. TOWNSHEND:  Good morning, Your Honor.  Adam

14  Townshend on behalf of the United states.

15         THE COURT:  Good morning.

16         MR. GIBBONS:  Good morning, Your Honor.  Christopher

17  Gibbons on behalf of the defendant Richard Densmore, who's

18  seated to my left.

19         THE COURT:  Good morning, Mr. Gibbons.  Good morning,

20  Mr. Densmore.

21         THE DEFENDANT:  Morning.

22         THE COURT:  Mr. Densmore, good morning.

23         THE DEFENDANT:  Morning.

24         THE COURT:  I'm just going to ask you to speak into

25  the microphone so that everything can be taken down.  All

1    right?

2         This is the date and time set for a change of plea.

3    I know we've had this I think a couple of times.  So I want to

4    make sure.

5         Mr. Densmore, I'm going to swear you in first.

6         THE CLERK:  Can you please stand and raise your right

7    hand.

8              *RICHARD ANTHONY REYNA DENSMORE,*

9         *having been sworn by the clerk at 10:55 a.m.,*

10                  *testified as follows:*

11        THE DEFENDANT:  Yes.

12        THE COURT:  All right.  Thank you, sir.  Have a seat.

13        All right.  Sir, you understand that the oath that

14   you just took is to tell the truth during this hearing.  If

15   you fail to do that, you could be charged with perjury or

16   providing a false statement.  Do you understand that?

17        THE DEFENDANT:  Yes.

18        THE COURT:  All right.  What's your full name?

19        THE DEFENDANT:  Richard Anthony Reyna Densmore.

20        THE COURT:  All right.  How old are you?

21        THE DEFENDANT:  48.

22        THE COURT:  Can you read, write, and understand the

23   English language?

24        THE DEFENDANT:  Yes.

25        THE COURT:  How far did you get in school?

1          THE DEFENDANT:  High school graduate.

2          THE COURT:  All right.  Nothing beyond high school?

3          THE DEFENDANT:  No.

4          THE COURT:  Can you hear and understand me this

5    morning?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Is there anything wrong with you today?

8    Are you suffering from any physical or mental ailments or

9    disabilities or anything else which would impair your ability

10   to understand the nature the charge that you're pleading

11   guilty to, what we're doing here today, and your decision to

12   plead guilty and the consequences of that?

13         THE DEFENDANT:  No.

14         THE COURT:  Have you taken any alcohol or drugs in

15   the last 24 hours, including prescription drugs, that, again,

16   would impair your ability to understand the nature of the

17   charge, the nature of the proceedings, your decision, and the

18   consequences of that decision?

19         THE DEFENDANT:  No.

20         THE COURT:  Mr. Gibbons, are you aware of any reason

21   why we can't proceed with the plea?

22         MR. GIBBONS:  I am not, Your Honor.  Thank you.

23         THE COURT:  Okay.  Mr. Densmore, as I indicated a few

24   minutes ago, we've been here or at least maybe a change of

25   plea was scheduled more than once.  So I want to make sure

1    that this is what you want to do and that you want to do that

2    now.

3              THE DEFENDANT:  Yes.

4              THE COURT:  Okay.  And you fully discussed the plea

5    as well as the consequences and what that will entail for you

6    with your attorney?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Okay.  And you're comfortable proceeding

9    with the plea?

10             THE DEFENDANT:  Yes.

11             THE COURT:  And you understand despite whatever the

12   representations and the advice that Mr. Gibbons gives you,

13   ultimately this is your decision, right?  You understand that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  And this is what you want to do?

16             THE DEFENDANT:  Yes.

17             THE COURT:  All right.  You understand that you have

18   the right to have an attorney represent you at every stage of

19   the proceeding.  You're free to hire an attorney.  If you

20   can't afford an attorney, you know that you can ask the Court

21   to appoint you an attorney at no cost.  You understand all

22   that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  That continues throughout.  Do you

25   understand?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you feel that you've had the chance to

3  discuss thoroughly with Mr. Gibbons what your situation is,

4  what your choices are, and your decision to plead guilty

5  today?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Could you hear him and understand him

8  during those conversations?

9          THE DEFENDANT:  Yes.

10         THE COURT:  If you asked any questions or if you had

11  any questions, did he answer those questions to your

12  satisfaction?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Are there any questions that are

15  outstanding that you still want some answers to?

16         THE DEFENDANT:  No.

17         THE COURT:  Are you satisfied overall with the advice

18  and the representation that he's giving you?

19         THE DEFENDANT:  Yes.

20         THE COURT:  All right.  Do you understand that you're

21  pleading guilty pursuant to a plea agreement, pleading guilty

22  to Count 1, which charges you with sexual exploitation of a

23  child?  Do you understand that?

24         THE DEFENDANT:  Yes.

25         THE COURT:  That carries maximum -- or minimum

1    penalties and maximum penalties.  There's a mandatory minimum

2    of 15 years, a maximum penalty of 30 years, a maximum fine of

3    $250,000.  There's a minimum supervised release of five years,

4    maximum of up to life, a special assessment of $100, plus

5    another assessment of $5,000 because of the nature of the

6    charge.  There's also potentially an additional assessment of

7    up to $50,000, again, because of the nature of the charge.

8    Restitution is mandatory.  You understand that?

9         THE DEFENDANT:  Yes.

10        THE COURT:  And forfeiture -- there might be

11   forfeiture involved as it relates to any devices or any things

12   that you may have used to conduct these activities.  Do you

13   understand that?

14        THE DEFENDANT:  Yes.

15        THE COURT:  You also understand that you'll have to

16   register as a sex offender?

17        THE DEFENDANT:  Yes.

18        THE COURT:  Okay.  Are there any mandatory minimum or

19   maximum penalties that I've not addressed?

20        THE DEFENDANT:  No.

21        MR. TOWNSHEND:  I don't believe so, Your Honor.

22   Supervised release is also a mandatory minimum of five years

23   and up to life.  But the Court's done a comprehensive

24   evaluation and assessment of the penalties.

25        THE COURT:  Okay.  Do you understand, sir, that in

1    terms of what the government would have to prove for -- prove

2    beyond a reasonable doubt as it relates to the sexual

3    exploitation of a child charge, they would have to prove that

4    you -- that that crime was committed, that you helped to

5    commit the crime or encouraged someone to commit the crime,

6    and that you intended to help commit or encourage the crime?

7    Do you understand that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Do you have any questions about what the

10   government would have to prove?

11             THE DEFENDANT:  No.

12             THE COURT:  Did I miss any elements, Mr. Townshend?

13             MR. TOWNSHEND:  No, Your Honor.  The substantive

14   crime here, as the Court has mentioned, was sexual

15   exploitation of a child.  And the government would have to

16   further prove that someone employed, used, persuaded, enticed,

17   or coerced a minor to engage in sexually-explicit conduct for

18   the purpose of producing a visual depiction of that conduct

19   and knowing or having reason to know that the visual depiction

20   was or would be transmitted using any means or facility of

21   interstate commerce.  So the aiding and abetting would be of

22   that substantive crime with those elements.

23             THE COURT:  Do you understand all that in terms of

24   what the government would have to prove?

25             THE DEFENDANT:  Yes.

1      THE COURT:  Okay.  We're going to talk a little bit

2  about sentencing guidelines.  We're going to also talk about

3  the rights that you're giving up by pleading guilty.  We'll go

4  through the plea agreement and then take the plea.

5      If at any point you have any questions, I want you to

6  interrupt me, ask your attorney, or ask me.  Do you understand

7  that?

8      THE DEFENDANT:  Yes.

9      THE COURT:  All right.  Pursuant to the Sentencing

10  Reform Act of 1984, the United States Sentencing Commission

11  has issued advisory guidelines for Judges to follow in

12  determining the sentence in a criminal case.

13      Have you and your attorney talked about the

14  guidelines that might apply to your case?  Obviously there are

15  mandatory minimums that are involved with your case, but there

16  are also guideline considerations and a guideline that will

17  apply.  Have you discussed that with your attorney?

18      THE DEFENDANT:  Yes.

19      THE COURT:  Do you understand that the Court will not

20  be able to determine the advisory guideline sentence range for

21  your case until after the presentence report has been

22  completed and you and the government have had an opportunity

23  to challenge the report that's been prepared?

24      THE DEFENDANT:  Yes.

25      THE COURT:  Do you understand that after it's been

1    determined what guideline applies to a case, I have the

2    authority in some circumstances to impose a sentence that is

3    more severe or less severe than the sentence called for by the

4    guidelines?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Do you also understand that under some

7    circumstances, you or the government may have the right to

8    appeal any sentence that's imposed?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Do you understand that if the sentence is

11   more severe than you expected, you'll still be bound by your

12   plea, you won't have any right to withdraw it?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Do you understand that parole has been

15   abolished, that if you're sentenced to prison, you won't be

16   released on parole?  You'll be released on what we call

17   supervised release.  And as I've indicated, for you, that will

18   mean at least a minimum of five years of supervised release

19   and up to life.  Do you understand that?

20           THE DEFENDANT:  Yes.

21           THE COURT:  All right.  Do you understand, again,

22   that you have the right to have an attorney represent you from

23   start to finish, that includes trial, sentence, and appeal,

24   and a lawyer will be appointed for you if you can't afford

25   one?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that you have the right

3     to plead not guilty and persist in that plea?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Do you understand that you have the right

6     to a trial by a jury with the assistance of an attorney?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Do you also understand that you have at

9     least 30 days to prepare for that trial?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand that you're presumed

12     innocent of all the charges against you, and the government

13     has the burden of proving you guilty of each element of each

14     charge beyond a reasonable doubt?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Do you understand that you have the right

17     to confront and cross-examine witnesses against you and to

18     call and compel witnesses to testify on your behalf?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Do you understand that you don't have to

21     testify at trial and nobody can say anything about you not

22     testifying or hold it against you?

23          THE DEFENDANT:  Yes.

24          THE COURT:  On the other hand, you have a right to

25     testify at trial if you wanted to.  Do you understand that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that if I accept your

3    plea, you'll not have a trial of any kind and you'll be giving

4    up all these rights that I've told you about?

5          THE DEFENDANT:  Yes.

6          THE COURT:  You'll also be giving up any claim that

7    the plea was the result of promises and threats that were not

8    disclosed to the Court or that it was not your choice to

9    plead.

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand that if I accept your

12    plea, you may be giving up the right to appeal issues that

13    would otherwise be appealable?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you understand that a plea means that

16    you have a conviction and that it may be used against you in

17    the future?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Do you understand that if you're on

20    supervised release or probation or parole on some other case,

21    that the plea in this case could affect your status on that

22    other case?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Do you understand the nature of the

25    charge that you're pleading guilty to, that being sexual

1  exploitation of a child?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Do you understand the penalties as

4  provided by law?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Do you understand your rights as I've

7  explained them to you?

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.  How do you plead as to

10  Count 1, which is sexual exploitation of a child?

11          THE DEFENDANT:  Guilty.

12          THE COURT:  Is your plea the result of force,

13  threats, or promises apart from what is included in the plea

14  agreement?

15          THE DEFENDANT:  No.

16          THE COURT:  Has anyone threatened you to get you to

17  plead guilty?

18          THE DEFENDANT:  No.

19          THE COURT:  Is it your own choice to plead guilty?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Do you make that choice freely and

22  voluntarily?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Are you a US citizen?

25          THE DEFENDANT:  Yes.

1          THE COURT:  So I have to advise you that if you

2     weren't, this plea could also affect your immigration status.

3     Do you understand that?

4          THE DEFENDANT:  Yes.

5          THE COURT:  All right.  Have you had an opportunity

6     to read the plea agreement?  It's eleven pages.

7          THE DEFENDANT:  Yes.

8          THE COURT:  Okay.  And I want you to go to page

9     eleven.  I know you had previously signed one back in March, a

10    plea agreement.  But there is --

11         And this plea agreement hasn't changed, correct,

12    since the last one?

13         MR. TOWNSHEND:  That's correct, Your Honor.

14         THE COURT:  Okay.  And did you sign and date --

15    well, I see.  So you had previously signed it in March of this

16    year, March 12th.  And then you signed it again on July 14th,

17    2024, correct?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Acknowledging that you've read the plea

20    agreement and that you are in agreement with everything that's

21    in the plea agreement, correct?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Okay.  Are there any pertinent provisions

24    that the government wants to highlight?

25         MR. TOWNSHEND:  Your Honor, the Court has

comprehensively covered, I think, the first six paragraphs of the plea agreement, both the elements, the minimum and maximum custodial sentences, supervised release and restitution and asset forfeiture.

And I'm sure we'll cover paragraph 7, which is the factual basis of guilt.

Paragraph 8, the government -- this is a five-count indictment against this defendant.  In paragraph 8, the government will agree to dismiss the remaining Counts 2 through 5 of the indictment at the time of sentencing.  But the Court may consider those dismissed counts, of course, in determining the applicable sentencing guideline range.

Paragraph 9 concerns acceptance of responsibility. If the Court calculates this defendant's -- or offense level at 16 or above, the government will move for a third point for acceptance at the time of sentencing.

Paragraph 10 relates to the government's non-prosecution agreement.

Paragraph 11 concerns prison placement.

The Court has covered paragraph 12, the application of the sentencing guidelines.

Paragraph 13, there is no agreement between the parties about the final sentencing guidelines range.

The Court has covered the waiver of constitutional rights as a result of any plea, which is in paragraph 14.

1    Paragraph 15 concerns the defendant's waiver of his

2    rights under the Freedom of Information Act to get more

3    information about this case.

4    Paragraphs 16 and 17 confirm that this agreement is

5    between the parties and the Court is not a party to the

6    agreement.

7    Paragraph 18 concerns the consequences of breach.

8    And if the defendant breaches this agreement before or after

9    sentencing, the government has the right to terminate the

10   agreement and return the parties to the status that they were

11   before signature.

12   Paragraph 19 says this is the complete agreement.

13   And the Court has already covered the collateral

14   consequence of a conviction in paragraph 20, which is sex

15   offender registration.

16   THE COURT:  All right.  Mr. Gibbons, anything you

17   want to highlight as it relates to the plea agreement?

18   MR. GIBBONS:  No, Your Honor.  I'm satisfied.

19   THE COURT:  Okay.  Mr. Densmore, I know that you have

20   indicated you've thoroughly read the entire plea agreement.

21   That includes the factual basis of guilt in paragraph 7,

22   correct?

23   THE DEFENDANT:  Yes.

24   THE COURT:  Okay.  As we've indicated, there is a

25   forfeiture allegation -- I'm sorry.  That's back on

1    paragraph 6 -- that includes forfeiture of any phones or any

2    other devices that were used to perpetrate the crime.  You

3    understand that?

4            THE DEFENDANT:  Yes.

5            THE COURT:  You understand that you're -- by pleading

6    guilty, you're waiving all the rights that I have outlined for

7    you.  That includes potentially also waiving rights as it

8    relates to an appeal of certain things as outlined in

9    paragraph 14(f).  You understand that?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Okay.  As I've indicated, one of the

12   penalties associated with this offense is that you register as

13   a sex offender, and that is a mandatory condition.  You

14   understand that?  That doesn't change depending on where you

15   live or where you work or anything like that.

16           THE DEFENDANT:  Yes.

17           THE COURT:  Okay.  And that you understand also that

18   if you fail to register, that could subject you to further

19   charges.  You understand that?

20           THE DEFENDANT:  Yes.

21           THE COURT:  All right.  Do you think you've been

22   promised anything more than what's been included in the plea

23   agreement?

24           THE DEFENDANT:  No.

25           THE COURT:  Are there any promises or agreements that

1    you believe have been made to you that have not been put on

2    the record or in this plea agreement?

3          THE DEFENDANT:  No.

4          THE COURT:  Does the written plea agreement include

5    all aspects of the agreement that you have with the

6    government?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And you are in agreement with all aspects

9    of that agreement, correct?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Okay.  Are counsel aware of any promises,

12    threats, or inducements other than what's been indicated on

13    the record or disclosed on the record?

14          MR. TOWNSHEND:  No, Your Honor.

15          MR. GIBBONS:  I'm aware of none, Your Honor.

16          THE COURT:  All right.  Mr. Townshend, if you could

17    make a record of what evidence would be offered at trial to

18    prove the defendant's guilt of the charge, Count 1.

19          MR. TOWNSHEND:  Thank you, Your Honor.  The

20    government's proofs at trial, which would include information

21    obtained through search warrants and subpoenas to Discord,

22    which is a social media platform, images of the defendant's

23    phones that were seized during two separate search warrants

24    and witness testimony including from the victim Jane Doe.

25          That evidence and others would include -- excuse me.

1    Establish that in September of 2022, the defendant, while in

2    Manistee County in this district, contacted another Discord

3    user named Jane Doe, who's identity is known to the government

4    and the defense.  The defendant requested a picture of Jane

5    Doe with her bare chest with the defendant's Discord username

6    Rabid written on it.  And the defendant offered to send Nitro,

7    which is a form of currently on Discord, to encourage Jane Doe

8    to send that picture.

9        While it's not an element of the offense, Your Honor,

10   the government would introduce proof showing that the

11   defendant, in fact, knew that Jane Doe was under the age of 18

12   and was a minor at the time of that request and the time of

13   the subsequent video that I'll talk about.

14       Jane Doe expressed reservations at the defendant's

15   request, and the defendant then contacted another Discord user

16   identified as Person A, again, known to the government and the

17   defense.  Person A had an online relationship with Jane Doe.

18   The defendant asked Person A to get a full body nude picture

19   of Jane Doe with Rabid, again, written on her bare chest and

20   sent Person A, again, this Nitro currency to encourage

21   Person A to make that request of Jane Doe.

22       Person A, in fact, made that request of Jane Doe,

23   promised Jane Doe, again, Nitro currency if she sent a full

24   body nude picture of herself.  Jane Doe complied and sent

25   actually a video over the internet of herself with Rabid

1  written on her chest.  That video does contain a lascivious

2  expedition of Jane Doe's genital area.

3        She sent that, again, over the internet to the

4  defendant and to Person A.  The defendant received that and

5  kept it on a Motorola phone that he had that was manufactured

6  in China.

7        And that would be, again, Your Honor the nature of

8  the government's proofs at trial.

9        THE COURT:  Mr. Townshend, you indicated something

10  about the age of the victim is not an element.  Is it not?

11        MR. TOWNSHEND:  The defendant's -- and I have the

12  Sixth Circuit Pattern Jury Instructions 16.01(2)(B).  For

13  sexual exploitation of a child, it's not necessary that the

14  defendant knew that the victim was a minor.  But I put on the

15  record that the government believes that its trial proofs

16  would show that the defendant did, in fact, know that in this

17  case.

18        THE COURT:  All right.  Thank you.

19        All right.  Sir, tell me in your own words what you

20  did on or about September of 2022 in this district that makes

21  you guilty of the sexual exploitation of a child.

22        THE DEFENDANT:  I asked a third party to have Jane

23  Doe send me a video.  I knew Jane Doe was a minor.  I knew the

24  video would be sent via the internet.  I knew it would be

25  sexually explicit and nude, under 18.  And I'm sorry.

1          THE COURT:  All right.  So you -- you asked Jane Doe

2     to send an image, and you asked someone else or persuaded

3     someone else to have Jane Doe send an image, correct?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Okay.  And these were sexually-explicit

6     images, correct?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And you knew that Jane Doe was a minor?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Okay.  That was sent to you via the

11     internet through some program, correct?

12          THE DEFENDANT:  Yes.

13          THE COURT:  These were either images and/or videos,

14     correct?

15          THE DEFENDANT:  Yes.

16          THE COURT:  You saved at least one video on your

17     phone, the Motorola phone, correct?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And you don't dispute that that phone was

20     manufactured in China outside of the US?

21          THE DEFENDANT:  I'm sure -- yes.

22          THE COURT:  Okay.  You don't dispute that?

23          THE DEFENDANT:  I don't dispute that.

24          THE COURT:  One of the elements is that it must have

25     crossed a state line.  You don't dispute that that occurred,

1    correct?

2              THE DEFENDANT:  No.

3              THE COURT:  Or that that image did?

4              THE DEFENDANT:  No.

5              THE COURT:  Mr. Townshend, any further questions?

6    Are you satisfied?

7              MR. TOWNSHEND:  Just on venue, Your Honor.

8              Just clarifying, Mr. Densmore, that you were In

9    Manistee County in this Western District of Michigan at the

10   time of the conduct that you've described, sir.

11             THE COURT:  Is that correct?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Okay.  Satisfied?

14             MR. TOWNSHEND:  I'm satisfied, Your Honor.

15             THE COURT:  Are you satisfied, Mr. Gibbons?

16             MR. GIBBONS:  I am.

17             THE COURT:  I do find that the plea is made knowingly

18   and with full understanding of each of the rights that I've

19   explained to the defendant; that it's made voluntarily, free

20   from any force, threats, or promises; that the defendant

21   understands the nature of the charge, the penalties provided

22   by law; and that the plea has a sufficient factual basis.  I

23   do accept the plea and adjudicate the defendant guilty.

24   Detention will remain.

25             Sentencing, November 7th, 10:00 a.m.  Does that work

1    for everyone?

2                MR. GIBBONS:  November 7th, Your Honor?

3                THE COURT:  Yes.  November 7th, 10:00 a.m.

4                MR. GIBBONS:  Yes, that's just fine.

5                MR. TOWNSHEND:  Yes, Your Honor.

6                THE COURT:  All right.  There's also pending a

7    government's motion in limine that I assume you're withdrawing

8    at this time.

9                MR. TOWNSHEND:  That's correct, Your Honor.

10               THE COURT:  This is ECF 43.

11               MR. TOWNSHEND:  Yes, Your Honor.  The government will

12   move to withdraw that motion at this time.

13               THE COURT:  All right.  I'll grant that motion.

14               All right.  Anything else from anyone?

15               MR. GIBBONS:  No, Your Honor.

16               MR. TOWNSHEND:  No, Your Honor.

17               THE COURT:  All right.  Thank you, everyone.

18               THE CLERK:  All rise.  Court is adjourned.

19                       *(Concluded at 11:17 a.m.)*

20

21

22

23

24

25

*REPORTER'S CERTIFICATE*

I, Trisha N. Cameron, Official Court Reporter for the United States District Court for the Western District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a full, true and correct transcript of the proceedings had in the within entitled and numbered cause on the date hereinbefore set forth; and I do further certify that the foregoing transcript has been prepared by me or under my direction.

/s/ Trisha N. Cameron

Trisha N. Cameron
CSR, RMR, CRR, RDR
U.S. District Court Reporter
128 Federal Building
315 West Allegan Street
Lansing, Michigan 48933
(517) 270-4735